JAMES BRADY, Appellant, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Respondent.

Under the provision of the New York City Consolidation Act (§ 64, chap. 410, Laws of 1882), providing that whenever "any work is necessary to be done to complete and perfect a particular job," involving an expenditure of more than $1,000, it shall be done by contract, let to the lowest bidder, the head of the appropriate department is the judge of the necessity and his certificate, is as between the contractor and the city conclusive, where there is no allegation of fraud or collusion, and where the facts certified indicate that the necessity was a possible incident of the work.

Plaintiff entered into a contract with the city to erect a restaurant in Central Park. By the specifications the woodwork of certain rooms and halls was to be of white pine. The department of public parks ordered plaintiff to substitute cherry for white pine; this he did. The extra cost agreed to be paid for the substitution was $975. The department filed a certificate of the necessity of such expenditure. In an action to recover said sum, *held*, that such reasonable necessity for the change existed as to authorize the exercise of its judgment by the board;- also, that in determining whether the $1,000 limit had been exceeded, the cost of the

pine fitting called for by the original contract was not to be considered, but simply the additional expenditure incurred by the change; and that, therefore, plaintiff was entitled to recover.

*Brady* v. *Mayor, etc.* (23 J. & S. 45) reversed.

(Argued January 15, 1889; decided March 5, 1889.)

APPEAL from order of the General Term of the Superior Court of the city of New York, made June 23, 1887, which reversed a judgment in favor of plaintiff entered upon a decision of the court on trial without a jury. (Reported below, 23 J. & S. 45.)

This action was brought to recover $975, the agreed price for certain extra work done by plaintiff. The court found, in substance, these facts :

In 1883 plaintiff entered into a contract with the department of public parks of the city of New York for the erection of a restaurant at Mount St. Vincent, Central Park. According to the specifications, contained in the agreement, all doors, architraves, bases and other trimmings in the first story hall, vestibule, café, wine-room, and for newels, balusters and rails for principal staircase in the building, were to be constructed of white pine wood. On April, 14, 1884, the said department, in writing, ordered the plaintiff to furnish all the necessary labor and materials and substitute cherry wood for white pine, the extra cost not to exceed $975. The department at the same time filed a certificate of the necessity of such expenditure as required by the consolidation act (§ 64.) The value of doing the designated work in white pine was about $325. The value of doing the designated work in cherry wood, over and above the cost of doing the same in white pine wood, was $975. Plaintiff did the work pursuant to the order and completed his contract. The price fixed by the original contract was paid, but the additional sum of $975 was not paid.

*George G. De Witt, Jr.*, for appellant. The plaintiff having furnished and delivered property and performed ser-

vices, which have been received and accepted by the defendants, they should be held liable, unless there has been a violation of some express requirement of the statute. (*McDonald* v. *Mayor, etc.*, 68 N. Y. 23 ; *Fitzgerald* v. *Quann*, 109 id. 441 ; *Salters* v. *Tobias*, 3 Paige, 338 ; *Nelson* v. *Mayor, etc.*, 63 N. Y. 535 ; *Moore* v. *Moore*, 73 id. 248 ; *Schier* v. *City of Buffalo*, 35 Hun, 564 ; *McCloskey* v. *City of Albany*, 7 id. 472.) A valid separate contract was made for the cherry wood and labor upon which the defendants are liable. (*Nelson* v. *Eaton*, 26 N. Y. 410 ; *Bigelow* v. *Benedict*, 70 id. 202 ; *Story* v. *Solomon*, 71 id. 420 ; *Woodward* v. *Fuller*, 80 id. 312, 315 ; *Griffin* v. *Miner*, 54 Super. Ct. 46.) If no valid separate contract was made for the cherry wood, and the substitution must be regarded as an alteration of the first contract, still there has been no violation of any express provision of the statute, and the plaintiff having in good faith delivered property and performed services which have been appropriated by the defendants, they should be held liable. (*Harlem Gas Co.* v. *Mayor, etc.*, 33 N. Y. 324 ; *Johnson* v. *H. R. R. R. Co.*, 49 id. 462 ; *McCluskey* v. *Cromwell*, 11 id. 593, 603 ; *Bebee* v. *Griffing*, 14 id. 235 ; *Williams* v. *Dayton*, 55 id. 367, 380 ; *In re Merriam*, 84 id. 596, 607 ; *In re Anderson*, 109 id. 554, 559 ; *In re Blodgett*, 27 Hun, 12, 16 ; *Reilly* v. *Mayor, etc.*, 111 N. Y. 473 ; *Fleming* v. *Village of Suspension Bridge*, 92 id. 368 ; *McCloskey* v. *City of Albany*, 7 Hun, 472.)

*David J. Dean* for respondent. The department of public parks had no power to alter or change, pending the progress of the work, the original specifications upon which the contract had been advertised and let. (*In re Mahan*, 20 Hun, 302 ; *Brady* v. *Mayor, etc.*, 20 N. Y. 312 ; *In re Merriam*, 84 id. 596 ; *People* v. *Mayor, etc.*, 32 Barb. 35 ; *Hague* v. *Philadelphia*, 48 Penn. St. 527 ; *McBrien* v. *City of Grand Rapids*, 56 Mich. 95 ; 7 Am. and Eng. C. C. 573 ; *Bonesteel* v. *Mayor, etc.*, 22 N. Y. 162.) Whether the work ordered was or was not necessary to complete or perfect the job of erecting the refreshment house, the contract in either case being unlawful,

there can be no recovery, even though the city has accepted and had the benefit of the work performed. (*Brady* v. *Mayor, etc.,* 20 N. Y. 319; *McDonald* v. *Mayor, etc.,* 68 id. 23; *Parr* v. *Village of Greenbush,* 72 id. 463.) The amount of the contract for the cherry wood and labor thereon being in excess of the amount of $1,000, the commissioners had no power to make the contract, and it is therefore void. (*Moore* v. *Mayor, etc.,* 73 N. Y. 238, 245; *Smith* v. *City of Newburgh,* 77 id. 130, 136; *Hubbard* v. *Sadler,* 104 id. 223; *Donovan* v. *City of New York,* 33 id. 291, 293; *Dickinson* v. *City of Poughkeepsie,* 75 id. 65, 70; *In re Eager,* 46 id. 100; Dillon on Mun. Corp. §§ 383, 388; *Burrill* v. *Boston,* 2 Clif. 590; *Whiteside* v. *U. S.,* 93 U. S. 247, 257; *Hawkins* v. *U. S.,* 96 id. 691; *Poillon* v. *City of Brooklyn,* 101 N. Y. 135; *McDonald* v. *Mayor, etc.,* 68 id. 23; *Parr* v. *Greenbush,* 72 id. 463.)

FINCH, J. The reversal by the General Term is sought to be sustained by two propositions argued on behalf of the city; first, that no necessity existed for the change authorized by the new or supplemental contract, and second, that it involved an expenditure of more than $1,000, and so, was invalid, unless submitted to public competition. Our judgment is adverse to both propositions.

The law requiring contracts on behalf of the city to be founded on sealed bids or proposals describes its own application thus: "Whenever any work is necessary to be done to complete or perfect a particular job, or any supply is needful for any particular purpose, which work and job is to be undertaken or supply furnished for the corporation, and the several parts of the said work or supply shall together involve the expenditure of more than one thousand dollars." The new contract here was to substitute cherry for pine in the hall, vestibule, café and wine-room, and for newels, balusters and rails of the principal staircase in the Mount St. Vincent restaurant, which was being constructed in the Central Park. The first inquiry is, who is to judge of the necessity, and what is the

effect of that judgment? The same section which prescribes the necessity (Consol. Act, § 64), also requires that it shall be certified to by the head of the appropriate department. That certificate was made in this case, but is now asserted to be in no respect conclusive, and to leave open the question whether the particular necessity existed. As between the contractor and the city, the certificate of the proper officer is certainly conclusive where there is no allegation of fraud or collusion, and where the facts indicate that the necessity certified was a possible incident of the work to be done or the supply to be furnished. We ought not to review or reverse the conclusion of the officer specially charged with the determination of the question where we can see that the facts called for the exercise of his judgment and that a reasonable necessity might, by possibility, have existed. We think that was the situation in the present case.

A restaurant for the use and convenience of the public was being erected in the Central Park. Upon that park large sums have been expended to enhance its attractions, and make it not only useful but beautiful. Much of that expenditure has been necessary, not in the hard and narrow sense of the word, but relatively to the standard of taste and beauty adopted as the controlling guide. Much was reasonably to be deemed necessary there, which elsewhere could not be and would verge upon pure extravagance. A restaurant in that park should not disgrace the standard of its surroundings. It was better not to build it at all than with a cheap parsimony and bad taste. These considerations might rightfully influence the constructing board and take their place among the reasonable necessities of the work. In their plans the main vestibule and café and even the principal staircase were to be finished in pine. Undoubtedly when so finished the job would be "complete," but would it also be "perfect?" Great changes have come about in the construction of interiors. The use of hard woods has become the rule where any degree of elegance is sought, and a café in the Central Park finished in pine, even to the staircase rails and balusters, might well be deemed unfit

and inappropriate, not only as it respected its appearance, but also its durability. During the pleasant months it would probably be thronged, and the evidence shows that the pine would yield and wear while the cherry would remain permanent and durable. Looking at the situation with its surroundings, I think such reasonable necessity for the change existed as to call into play the judgment of the board. The wisdom or prudence of its exercise we are not called upon to discuss.

The remaining question is whether the change ordered and made involved an expenditure of over $1,000. The General Term has so held upon the ground that to the $975, which was the contract-price of the change, must be added the cost of the pine fitting under the original contract. We think that is a mistaken view. The original contract was to be performed for about $29,000. That was founded upon sealed bids and included the fitting of the rooms and construction of the staircases.. The contractor was not released from that work, and did perform it, and so was entitled to his full pay under the old or original contract. If he had used cherry without any arrangement for an extra compensation he would simply have completed the original contract for the original price. The supplemental contract was for extra work and material beyond the original contract-price, and the price of that was simply the $975. I think we may see it in another way by the inquiry how much of additional expenditure was incurred by the change. The $29,000 was payable for the work of the original contract. That required doors, architraves, bases and staircase. All these were built and furnished and the contract-price thus earned, but an additional expenditure of $975 was involved in the change ordered from pine to cherry. The total expenditure was increased only by the value of the extra material and labor beyond that already covered by a valid contract; and the two contracts together when both were fulfilled did not add to the original and authorized expenditure more than $1,000. The order made related to and covered only the excess of value due to the extra work and material. The price of the pine and its fitting went as far as

it could in paying for the cherry and its fitting and the new contract began and its expenditure commenced at the point where the old one was exhausted. Viewing the matter thus, we think the contractor should have his pay which he has fairly earned.

The order of the General Term should be reversed, and the judgment of the Special Term of the Superior Court affirmed, with costs.

All concur.

Order reversed and judgment affirmed.